IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

    *Plaintiff*,

    v.

ALONZO BUCKSON,

    *Defendant*.

Criminal No. ELH-17-0232

**MEMORANDUM OPINION**

Defendant Alonzo Buckson, through counsel, filed a "Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)." ECF 522. The motion is supported by a memorandum (ECF 524) (collectively, the "Motion") and two exhibits. The government opposes the Motion (ECF 529), supported by one exhibit. Defendant has replied. ECF 533.

No hearing is necessary to resolve the Motion. For the reasons that follow, I shall grant the Motion.

**I. Background**

Buckson was one of eleven defendants charged on June 6, 2017, in a Superseding Indictment. ECF 20; ECF 20-1; ECF 22.[1] In particular, he was charged in Count One with conspiracy to distribute one kilogram or more of heroin as well as fentanyl. In Count Four, defendant was charged with possession with intent to distribute heroin. And, Count Five charged him with possession with intent to distribute cocaine. *Id.*

On August 23, 2018, Buckson entered a plea of guilty (ECF 394) to a one-count

---

[1] The filing at ECF 20 is incomplete. Another copy is docketed at ECF 20-1. And, ECF 22 is the redlined version.

Superseding Information.  ECF 389.  It charged Buckson with conspiracy to distribute and possess with intent to distribute 100 grams or more of a mixture containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B).  *Id.*  The plea was tendered pursuant to a Plea Agreement.  *See* ECF 391. In particular, the plea was entered under Fed. R. Crim. P. 11(c)(1)(C), by which the parties agreed to a sentence of 60 months' incarceration. *Id.* ¶ 9.

The Plea Agreement included a Stipulation of Facts.  *Id.* at 9.  The Stipulation reflected that at least as early as December 2016, defendant conspired with others to obtain and distribute 100 grams or more of heroin at a street-level drug "shop" in Baltimore. *Id.* Moreover, defendant agreed that it was reasonably foreseeable to him that the members of the conspiracy "would distribute one hundred grams or more of heroin." *Id.*

Sentencing was held on October 9, 2018.  ECF 418. Buckson, who was born in 1989, was 28 years old at the time of his sentencing.  ECF 529-1 (Presentence Report, "PSR") at 3.  He reported that he has a "bullet fragment" in his left shoulder due to a shooting in 2016 and he broke his right ankle in 2011. *Id.* ¶ 51. The defendant began to use Percocet and OxyContin after he broke his ankle, and he was using 10 to 15 milligrams on a daily basis. *Id.* ¶ 55. He also had lead paint poisoning from his childhood residence, but was reportedly unable to receive services for this because he was over the age of 21 when he began to seek assistance. *Id.* ¶ 52.  The defendant is the father of three children from three relationships.  *Id.* ¶ 48.

The PSR reflected a final offense level of 21. *Id.* ¶ 24. And, because the defendant had six criminal history points, he had a Criminal History Category of III. *Id.* ¶¶ 35-36.

Based on a final offense level of 21 and a Criminal History Category of III, Buckson's advisory sentencing guidelines ("Guidelines") would have called for a sentence ranging from 46 months to 57 months' incarceration. *Id.* ¶ 63. However, pursuant to U.S.S.G. § 5G1.1(b), the

Guidelines were adjusted to 60 months, because of the congressionally mandated minimum sentence required for the offense.

At sentencing, the Court imposed a sentence of 60 months of incarceration, with credit for time served from June 29, 2017 until November 8, 2017, and from December 12, 2017 to October 9, 2018. ECF 421. The sentence corresponded to the congressionally mandated minimum term of imprisonment.

Defendant, who is now 31 years of age, is serving his sentence at FCI Allenwood Medium. ECF 529. He has served about 42 months of his sentence, or roughly 70%, exclusive of good conduct credit.  Buckson has a projected release date of November 26, 2021. ECF 529 at 2.

Buckson sought compassionate release from the Warden in August 2020. ECF 524-1 at 1. The Warden denied Buckson's request in October 2020, and he filed an administrative appeal on the same day. *Id.* at 5. Buckson suffers from Type 2 diabetes, obesity, hypertension, and asthma. ECF 524-1 at 6 (Medical Records).

## II.  Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019).  But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011).  One such exception is when the modification is "expressly permitted by statute."  18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence.  Section 3582 was adopted as part of the Sentencing Reform Act of 1984.  It originally permitted a court to alter a sentence only upon

a motion by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984).

Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief. *See*,

*e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v.*

*Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying

compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished. The BOP rarely filed

motions on an inmate's behalf. As a result, compassionate release was exceedingly rare. *See*

*Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing*

*Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice)

(observing that, on average, only 24 inmates were granted compassionate release per year between

1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism

when it enacted the First Step Act of 2018 ("FSA"). *See* Pub. L. 115-391, 132 Stat. 5239 (2018);

*see United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020). As amended by the FSA, 18 U.S.C.

§ 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of

the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all

administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf

or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility,"

whichever occurs first. So, once a defendant has exhausted his administrative remedies, he may

petition a court directly for compassionate release. *McCoy*, 981 F.3d at 276.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after

considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds

that

(i) extraordinary and compelling reasons warrant such a reduction;

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with applicable policy statements issued by the Sentencing Commission.

Notably, "Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release." *McCoy*, 981 F.3d at 276. But, in U.S.S.G. § 1B1.13, titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement," the Sentencing Commission addressed the "extraordinary and compelling reasons" that might warrant compassionate release. *See McCoy*, 981 F.3d at 276. The Sentencing Commission acted pursuant to 28 U.S.C. § 994(t), as well as § 994(a)(2)(C). *McCoy*, 981 F.3d at 276. However, as the *McCoy* Court observed, the policy statement was issued in 2006 and was last updated in November 2018, prior to the enactment of the First Step Act in December 2018. *Id.*

In particular, U.S.S.G. § 1B1.13 provides that, on motion by the Director of the BOP, the court may reduce a sentence where warranted by extraordinary or compelling reasons (§ 1B1.13(1)(A)); the defendant is at least 70 years old and has served at least 30 years in prison (§ 1B1.13(1)(B)); the defendant is not a danger to the safety of any other person or to the community (§ 1B1.13(2)); and the reduction is consistent with the policy statement. U.S.S.G. § 1B1.13(3).

The Application Notes to U.S.S.G. § 1B1.13 indicate that compassionate release may be based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons."   U.S.S.G.  §  1B1.13 App. Notes 1(A)-(D). Application Note 1 to U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows:

> 1. **Extraordinary and Compelling Reasons**.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A)   **Medical Condition of the Defendant**.—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> (I)  suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Application Note 1(B) provides that age is an extraordinary and compelling reason where the defendant is at least 65 years of age, has serious physical or mental health issues, and has served at least 10 years in prison or 75% of the sentence.  Application Note 1(C) concerns Family Circumstances. Application Note 1(D), titled "**Other Reasons**," permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  U.S.S.G. § 1B1.13 App. Note 1(D).  This is

the "so-called, 'catch-all' category." *McCoy*, 981 F.3d at 276.

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205. However, the Court may not rely on the Program Statement. Rather, the Court must consider the Sentencing Commission's policy statements. *United States v. Taylor*, 820 F. App'x 229, 229-30 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction").

As noted, "[w]hen deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction"). However, as indicated, the policy statement in § 1B1.13 of the Guidelines was last updated in November 2018, before the enactment of the First Step Act. Thus, it is only "directed at BOP requests for sentence reductions." *McCoy*, 981 F.3d at 276 (citing U.S.S.G. § 1B1.13). In other words, "[b]y its plain terms…§ 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)." *Id.* at *7; *see also United States v. Zullo,* 976 F.3d 228, 230 (2nd Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1108-12 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180-81 (7th Cir. 2020).

Accordingly, "[a]s of now, there is no Sentencing Commission policy statement 'applicable' to [] defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *McCoy*, 981

F.3d at 283.   Therefore, district courts are "'empowered…to consider any extraordinary and compelling reason for release that a defendant might raise.'"   *McCoy*, 981 F.3d at 284 (quoting *Zullo*, 976 F.3d at 230).

Nevertheless, as the movant, the defendant bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582.   *See*, *e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020).   If the defendant can show an extraordinary and compelling reason that renders him eligible for a sentence reduction, the Court must then consider the factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *Dillon*, 560 U.S. at 826-27; *see also United States v. Trotman*, 829 Fed. App'x 607, 608-9 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under 18 U.S.C. § 3582(c)(1)(A), the court must consider the sentencing factors under 18 U.S.C. § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020).   But, compassionate release is a "rare" remedy.   *Chambliss*, 948 F.3d at 693-94; *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

### III.  COVID-19[2]

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, 461 F. Supp. 3d 214, 223 (D. Md. 2020). That crisis is COVID-19.[3]   The World Health

---

[2] The Court may take judicial notice of matters of public record.  *See* Fed. R. Evid. 201.

[3] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19.  *See Naming the Coronavirus Disease*

Organization declared COVID-19 a global pandemic on March 11, 2020. *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

The judges of this Court "have written extensively about the pandemic." *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases). Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic. *Id.*

That said, the COVID-19 pandemic is the worst public health crisis that the world has experienced since 1918. *See United States v. Hernandez*, 451 F. Supp. 3d 301, 305 (S.D.N.Y. 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration."). Although many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories . . . ." *Antietam Battlefield KOA*, 461 F. Supp. 3d at 223 (citation omitted). And, the pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, 818 Fed. App'x 393 (6th Cir. 2020). Indeed, for a significant period of time, life as we have known it came to a halt. Although many businesses and schools reopened for a period of time, many are again subject to closure or substantial restrictions, due to the virulent resurgence of the virus in recent weeks.

The Court must also underscore that the virus is highly contagious. *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh. As of March 3, 2021, COVID-19 has infected

---

*and the Virus that Causes It*, WORLD HEALTH ORG., https://bit.ly/2UMC6uW (last accessed June 15, 2020).

more than 28.7 million Americans and caused over 517,00 deaths in this country.  *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed Mar. 3, 2021).

Unfortunately, there is currently no cure or proven treatment that is generally available for the virus.  But, the country has recently seen the rollout of three vaccines for COVID-19 (Pfizer, Moderna, and Johnson & Johnson). The vaccines were initially made available to health care workers and the elderly in nursing homes.  But, the criteria for eligibility has expanded considerably and varies among the States.

Notably, the BOP published "COVID-19 Vaccine Guidance" on January 4, 2021 (version 7.0). *COVID-19 Vaccine Guidance*, Federal Bureau of Prisons Clinical Guidance (Jan. 4, 2021), https://www.bop.gov/resources/pdfs/2021_covid19_vaccine.pdf. Administration of the COVID-19 vaccine (Pfizer and Moderna) will "align with [recommendations of] the Centers for Disease Control and Prevention." *Id.* at 4. Therefore, once the BOP receives the vaccine, a prisoner at heightened risk will receive priority for receipt of the vaccine. *Id.* at 6.

The BOP reportedly received its first shipment of vaccines on December 16, 2020. Walter Pavlo, F*ederal Bureau of Prisons Starts Vaccination of Staff, Inmates Soon Thereafter*, Forbes (Dec. 21, 2020), https://www.forbes.com/sites/walterpavlo/2020/12/21/ federal-bureau-of-prisons-starts-vaccination-of-staff-inmates-soon-thereafter/?sh=5683b99aa96f. As of March 3, 2021, the BOP had 124,680 federal inmates and 36,000 staff. And, by that date, the BOP had administered 61,798 vaccine doses to staff and inmates. *See* https://www.bop.gov/coronavirus/ (last accessed Mar. 3, 2021).

Of relevance here, the Centers for Disease Control and Prevention ("CDC") has identified certain risk factors that increase the chance of severe illness.  Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity;

diabetes; liver disease; and a compromised immune system.  *See Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020, and again on July 17, 2020, the CDC revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19. Then, on November 2, 2020, to reflect the most recently available data, the CDC again revised its guidance.  *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 2, 2020), https://bit.ly/38S4NfY.   According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index ("BMI") is 30 or higher; serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; smoking; pregnancy; and Type 2 diabetes.  *Id.*  The CDC has also indicated that the risk for severe illness from COVID-19 increases with age, with older adults at highest risk.  *See Older Adults At Greater Risk of Requiring Hospitalization or Dying if Diagnosed with COVID-19*, CTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 27, 2020), https://bit.ly/3g1USZ1.

In addition, the CDC created a second category for conditions that "might" present a risk for complications from COVID-19. The factors that might increase the risk include asthma, cerebrovascular disease, hypertension, liver disease, cystic fibrosis, neurologic conditions, a compromised immune system, overweight (where the BMI is between 25 and 30), pulmonary fibrosis, thalassemia (a type of blood disorder), and Type 1 diabetes. *See id.*

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed December 9, 2020).   Social

distancing is particularly difficult in the penal setting, however. *Seth*, 2020 WL 2571168, at \*2. Prisoners have little ability to isolate themselves from the threat posed by the coronavirus. *Id.*; *see Cameron*, 2020 WL 2569868, at \*1; *see also United States v. Mel*, TDC-18-0571, 2020 WL 2041674, at \*3 (D. Md. Apr. 28, 2020) ("In light of the shared facilities, the difficulty of social distancing, and challenges relating to maintaining sanitation, the risk of infection and the spread of infection within prisons and detention facilities is particularly high."). Prisoners are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers, nor are they necessarily able to separate themselves from others. Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at \*2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493, 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and employees of the Bureau of Prisons ("BOP") from COVID-19. The DOJ has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

Former Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at \*8 (E.D. N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL 3105094, at \*9. Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 2020 WL 2571168, at \*2. Notably, the BOP has implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected. Indeed, as the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

As with the country as a whole, the virus persists in penal institutions.[4] As of March 3, 2021, BOP reported that 1,043 inmates out of a total of 124,680 inmates, and 1,616 BOP staff out

---

[4] The *New York Times* reported in June 2020 that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country. Timothy Williams et al., *Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2. More recently, on October 29, 2020, the *New York Times* reported that, "[i]n American jails and prisons, more than 252,000 people have been infected and at least 1,450 inmates and correctional officers have died" from COVID-19. *See Cases in Jails and Prisons*,

of some 36,000 staff members, currently test positive for COVID-19; 46,758 inmates and 4,891

staff have recovered from the virus; and 224 inmates and four staff members have died from the

virus.      Moreover,    the    BOP    has    completed    105,951    COVID-19    tests.    *See*

https://www.bop.gov/coronavirus/ (last accessed Mar. 3, 2021).  *See COVID-19*, Fed. Bureau of

Prisons, https://bit.ly/2XeiYH1.

With respect to FCI Allenwood Medium, where the defendant is now a prisoner, as of

March 3, 2021, the BOP reported that zero inmates have tested positive for COVID-19 and 556

inmates and 49 staff have recovered at the facility. And, at the Allenwood complex, 331 staff and

368 inmates have been inoculated with the vaccine.  *See* https://www.bop.gov/coronavirus/ (last

accessed Mar. 3, 2021).

## IV.  Discussion

Buckson has moved for compassionate release on the ground that his medical conditions

render him particularly vulnerable to COVID-19. ECF 524 at 2-3. In particular, Buckson suffers

from obesity, Type 2 diabetes, asthma, and hypertension. *Id.* at 2; *see* ECF 524-1 at 6. Moreover,

defendant contends that he is not a danger to the community and that the factors under 18 U.S.C.

§ 3553(a) favor his release. *Id.* at 3-5.

The government concedes that defendant's severe obesity is a CDC risk factor and thus

qualifies as an "extraordinary and compelling reason" for release. ECF 529 at 5. Nevertheless, it

---

N.Y. TIMES (Oct. 29, 2020), https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html.

On November 21, 2020, the *New York Times* reported that "U.S. correctional facilities are experiencing record spikes in coronavirus infections this fall. During the week of Nov. 17, there were 13,657 new coronavirus infections reported across the state and federal prison systems.*"* *America Is Letting the Coronavirus Rage Through Prisons*, N.Y. TIMES (Nov. 21, 2020), https://www.nytimes.com/2020/11/21/opinion/sunday/coronavirus-prisons-jails.html.

opposes Buckson's release, asserting that he remains a danger to the community and that the § 3553(a) factors militate against a reduction of his sentence. *Id.* at 6-9.

Buckson's medical records show that he currently has a BMI of 42.7, which qualifies as severe obesity. ECF 524 at 3 n.1. The CDC identifies both Type 2 diabetes and obesity as conditions that create an "increased risk of severe illness" from COVID-19. *People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (Feb. 3, 2021), https://bit.ly/38S4NfY. And, the CDC cautions that the "more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." *Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, Ctrs. For Disease Control & Prevention (May 14, 2020), https://bit.ly/2WBcB16. In addition to obesity and diabetes, Buckson suffers, *inter alia*, from asthma and hypertension.

Numerous courts have found that, in light of the COVID-19 pandemic, serious chronic medical conditions, including obesity and diabetes, qualify as compelling reasons for compassionate release. *See, e.g., United States v. Staten*, PJM-01-284-4, 2020 WL 4904270, at *2 (D. Md. Aug. 18, 2020) (finding an "extraordinary and compelling reason" for compassionate release based on a BMI of 38); *United States v. Williams*, PWG-19-134, 2020 WL 3073320 (D. Md. June 10, 2020) (finding obese defendant with a BMI of 32.5 qualified for compassionate release in light of COVID-19); *United States v. Quintero*, 08-CR-6007L, 2020 WL 2175171, at *1 (W.D.N.Y. May 6, 2020) (finding defendant's diabetes, compromised immune system, obesity, and hypertension satisfied an extraordinary and compelling reason); *United States v. Dawson*, No. 18-40085, 2020 WL 1812270, at *7 (D. Kan. Apr. 9, 2020) (granting compassionate release based on a defendant's obesity).

Accordingly, I am satisfied that Buckson satisfies the "extraordinary and compelling"

prong of the § 3582 analysis.

The Court must next consider whether, if released, Buckson would pose a danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A)(ii). Relief is appropriate under 18 U.S.C. § 3582(c)(1)(A) only if the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). To determine whether a defendant is a danger to the community, the Court must consider the factors under 18 U.S.C. § 3142(g), including the nature and circumstances of the offense, the history and characteristics of the defendant, and the danger that release would pose to any person or the community.

In addition, the Court must consider the factors set forth in 18 U.S.C. § 3553(a), as required by 18 U.S.C. § 3582(c)(1)(A). These include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

As I see it, the factors under § 3553(a) and § 3142(g) weigh in favor of reducing Buckson's sentence. Buckson's crime did not involve allegations of weapons or violence. Further, although he has several prior convictions, for the most part his offenses were comparatively minor.

In particular, Buckson's prior offenses include a prior conviction for theft under $100, three driving offenses, and a conviction for attempting to elude police by failing to stop. ECF 529-1, ¶¶ 27-29, 32, 34. The defendant received sentences that were virtually all suspended. In addition, in 2010, when defendant was 21 years old, he was convicted of second degree assault and was sentenced to two years, all of which was suspended. *Id.* ¶ 30. And, five months later, Buckson was convicted of a sexual offense in the third degree, for which he was sentenced to nine years'

incarceration, with seven years suspended.   There is no indication of a violation of parole or probation.   Clearly, defendant has already served a sentence that far exceeds any prior sentence.

Buckson's behavior over the past four years, while in BOP custody, is an important indicator of whether he remains a danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A)(ii). Courts place significant weight on a defendant's post-sentencing conduct because it "provides the most up-to-date picture of [his] 'history and characteristics.'"  *See Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)); *see also United States v. Scott*, CCB-95-202, 2020 WL 2467425, at *4 (D. Md. May 13, 2020). Defendant has not committed any infractions during his time in custody. ECF 524 at 4. And, he has made an attempt at self-improvement, by completing the Residential Drug Abuse Program ("RDAP") and other BOP programming. *Id.*; *see* ECF 524-1 at 10; ECF 524-2 (Certificates of Completion for BOP Programming).

If released, Buckson plans to live with his mother, a retired police officer, in Baltimore. ECF 524 at 4. He also has three different offers of employment. *Id.*

As noted, but for the mandatory minimum sentence, defendant's Guidelines would have been 46 to 57 months of incarceration.  He has already served about 42 months, exclusive of good conduct credit.  That equates to about 70% of his sentence of 60 months, exclusive of good conduct credit.  And, Buckson has a projected release date of November 26, 2021. Moreover, he could be released to a halfway house months earlier.

As I see it, Buckson's incarceration for a period of 42 months is sufficient to serve the sentencing goals of incapacitation, deterrence, retribution, and rehabilitation. Accordingly, I find that the factors under 18 U.S.C. § 3553(a) weigh in favor of reducing Buckson's sentence to time served plus fourteen days, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), with the added requirement of nine months of home confinement as a condition of supervised release.

## V.  Conclusion

For the foregoing reasons, I shall grant the Motion.

An Order follows, consistent with this Memorandum Opinion.


Date:   March 4, 2021                                                    /s/
                                                  Ellen Lipton Hollander
                                                  United States District Judge